UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-283-GWU

JAMIE HICKS,                                                                 PLAINTIFF,

VS.                       **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                 DEFENDANT.

## INTRODUCTION

The plaintiff had previously filed <u>Hicks v. Barnhart</u>, London Civil Action No. 06-167-GWU (E.D. Ky.) to appeal from the negative administrative decision on her application for Supplemental Security Income (SSI). After the undersigned's Memorandum Opinion, Order and Judgment of January 5, 2007 (Tr. 277-86), the case was returned to the agency for further consideration of the plaintiff's mental impairments. After consolidation with a subsequent SSI application, another negative administrative decision issued (Tr. 261-71) and the case is again before the undersigned on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); <u>Crouch v. Secretary of Health and Human Services</u>, 909 F.2d 852, 855 (6th

1

Cir. 1990).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Crouch, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process.  Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986).  An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless."  Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.  Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under

certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott

07-283  Jamie Hicks

v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The prior decision was remanded because the two equally weighted one-time psychological examiners had come to different conclusions about the plaintiff's abilities, and, while the court recognized that the Administrative Law Judge (ALJ) would normally have been entitled to accept the lesser restrictions of Dr. Kevin Eggerman, Psychologist Reba Moore had expressed opinions about additional mental factors, including reliability and functioning independently.  Therefore, the limitations listed by Moore were uncontradicted.  (Tr. 285-6).  The court additionally

4

noted that not all of Dr. Eggerman's restrictions were included in the hypothetical question.  (Tr. 286).

On remand, the ALJ obtained additional psychological and physical evaluations, as well as additional evidence from treating sources, and presented a Vocational Expert (VE) with a hypothetical question presuming that Mrs. Hicks could perform "light" level exertion with no crouching, crawling, or climbing, occasional stooping, a "limited but satisfactory" ability to deal with coworkers and the public, and a "seriously limited but not precluded" ability to deal with supervisors.  (Tr. 510). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies.  (Tr. 511).

Although the ALJ had obtained an additional psychological evaluation by Jeanne M. Bennett, a psychologist, who diagnosed an anxiety disorder and assigned a Global Assessment of Functioning (GAF) score of 50, indicative of "serious" symptoms per the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34, her report did not specifically address all of the areas limited by Reba Moore, either, including the factors of reliability and functioning independently specifically mentioned in the court's previous decision. (Tr. 286, 412-13).  Although the ALJ stated that he gave "great weight" to Dr.

07-283   Jamie Hicks

Bennett's opinion, it clearly does not resolve the issues for which the case was previously remanded.[1]

There are additional problems with the ALJ's physical restrictions.

Dr. Yogendra Prasad performed a consultative evaluation of the plaintiff on June 29, 2006, and noted that Mrs. Hicks was being treated for an anxiety disorder, depression, morbid obesity, hypothyroidism, emotional problems, and diabetes mellitus. (Tr. 404).  Her medication included a number of anti-depressant and anti-anxiety drugs, as well as Glucophage, a medication for diabetes, Lasix, a diuretic, and Synthroid, for hypothyroidism. (Id.).  Dr. Prasad found that the plaintiff was morbidly obese at a weight of 374 pounds, and had a restricted range of motion of the back, the hip joints, and the ankle joints, along with mild edema in her extremities. (Tr. 405, 408).  Dr. Prasad concluded that due to her morbid obesity, chronic low back pain, and bilateral hip pain, Mrs. Hicks could not walk more than 20 minutes without stopping, could not lift more than 20 pounds, and could not sit for more than one hour. (Tr. 405).

---

[1] As the plaintiff points out, the ALJ also indicated that Dr. Bennett had assessed a GAF score of 60.  (Tr. 266).  While this error in itself might not be grounds for remand, it does provide another reason to question the reliability of the ALJ's conclusions.  Nor do the most recent state agency reviewing psychologists deal with the issues raised in the remand, with one of the sources simply indicating that she was adopting restrictions from the 2005 ALJ decision.  (Tr. 415, 439-41).

The ALJ rejected Dr. Prasad's conclusions because he felt that they were based on the plaintiff's subjective complaints. (Tr. 264). However, there is no specific indication that the physician was relying on the plaintiff's subjective complaints regarding physical problems, and no indication that she made such statements to the physician. (Tr. 404-5).[2] The ALJ went on to specifically refuse to consider physical limitations caused by the plaintiff's morbid obesity, citing Social Security Ruling (SSR) 96-8p for the proposition that "it is incorrect to limit an individual's residual functional capacity due to age, sex, [or] body habitus." (Tr. 268-9). However, the ALJ did not take into account SSR 02-01p, which instructs adjudicators to consider the effects of obesity not only under the Listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity. SSR 02-01p, p. 1. The assessment should include the effect obesity has on an individual's ability to perform routine movements and necessary activities within a work environment. The ruling notes that individuals with obesity may have problems with their ability to sustain certain functions over time. Id., p. 6. Regarding the statement in SSR 96-8p cited by the ALJ, SSR 02-01p specifically states that it does not apply when, as here, obesity has been identified as a medically determinable impairment. Id.,

---

[2] In contrast, Dr. Prasad did indicate that the diagnosis of severe anxiety and depression were "per history." (Tr. 405-6).

7

07-283 Jamie Hicks

p. 7. Viewed in this light, the plaintiff's obesity could certainly be a factor, along with her range of motion limitations, in supporting Dr. Prasad's restrictions.[3]

In addition, as counsel for the plaintiff points out, the ALJ was critical of the plaintiff for not making an effort to remedy her condition. (Tr. 268). The Sixth Circuit has held that the finder of fact cannot presume obesity is a remedial condition or that a failure to lose weight is intentional. Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).[4] In the 2005 administrative decision, which the ALJ partially incorporated by reference, he stated that the plaintiff had demonstrated an ability to lose weight but it appeared that she had gained weight as a result of not taking her thyroid medication. (Tr. 35). However, the plaintiff is currently indicating that she takes her thyroid medication daily (Tr. 349), and the plaintiff indicated that she was being given medication refills by the Community Outreach Clinic (Tr. 503-4), whose records indicate that

---

[3] In a recent decision, the Sixth Circuit was critical of the Commissioner for not making an effort to determine what effect, if any, a claimant's obesity had on her level of physical functioning, and noted that the Commissioner had conceded that evaluation of obesity requires an individualized assessment of the impact of obesity on an individual's functioning, properly assessed by its actual impact on other systems through increased functional limitation. Kennedy v. Astrue, 247 Fed. Appx. 761 (6th Cir. 2007).

[4] The Johnson court also cited language from Harris v. Heckler, 756 F.2d 431, 436 n. 2 (6th Cir. 1985) to the effect that physicians' recommendations to lose weight do not necessarily constitute a prescribed course of treatment.

07-283  Jamie Hicks

Synthroid was being prescribed (Tr. 293, 469, 489, 498). As it currently stands, the record does not support a finding that the plaintiff's obesity was remedial.

Finally, although the ALJ rejected the restrictions of Dr. Prasad, he did not give a rationale for failing to include the restrictions given by the state agency reviewers, which he indicated had been given "appropriate weight" without further explanation. (Tr. 264). The reviewers had listed environmental restrictions on concentrated exposure to cold, heat, and hazards which were not included in the hypothetical question. (Tr. 431-7, 459-65). Accordingly, the ALJ's restrictions were not even supported by the non-examining sources.

The decision will be remanded for further consideration.

This the 4th day of June, 2008.

Signed By:
G. Wix Unthank
United States Senior Judge